FILED

2:58 pm, 11/14/07

Joyce W. Harris
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JESSICA HARFORD, | ) | Case No. 06-20341 |
| | ) | Chapter 7 |
| Debtors. | ) | |
| | ) | |
| JESSICA HARFORD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 06-2053 |
| | ) | |
| SALLIE MAE STUDENT LOAN PROGRAM, and DIRECT STUDENT LOANS/U.S. DEPARTMENT OF EDUCATION, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**OPINION ON COMPLAINT**

On September 12, 2007, the debtor Jessica Harford's First Amended Complaint to Determine the Dischargeability of Student Loans came before the court for trial. Ms. Harford appeared with counsel, Ken McCartney. The defendant, Sallie Mae Student Loan Program (Sallie Mae) appeared through counsel, Greg Dyekman, and the United States Department of Education (DOE) appeared through counsel, Steve Sharp. The court has considered the testimony and documentary evidence, the arguments of the parties, and the applicable law, and is prepared to rule.

## Jurisdiction

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) & (b) & 1334 (b). This is a core proceeding as defined by § 157(b)(2)(I).

## Findings of Fact

Ms. Harford attended the University of Puget Sound, a private college, from which she obtained a bachelor's degree in geology. She also has a criminal justice degree from an on-line school. Nearly all of her education expenses were financed by taking out the student loans at issue here.

The loans with the DOE were consolidated into one loan of approximately $49,000. Ms. Harford has not applied for enrollment in the William D. Ford Direct Loan Program (Ford Program), the income-contingent student loan repayment program. In the Ford Program, a payment schedule is established based on the amount a debtor can contribute to student loan repayment after deducting reasonable expenses. The payment term is from 120 to 360 months. The DOE loan is eligible for participation in the Ford Program. At the trial, Ms. Harford conceded that because of the Ford Program, repayment of the loan to the government is not an undue hardship and that she will apply to the Ford Program.

Ms. Harford owes five Sallie Mae loans with total debt of $125,000, including $34,000 in accrued interest. The interest rates on the Sallie Mae loans range from 8.125% to 12.25%. and the loans are not eligible to be consolidated. Sallie Mae has no income dependent repayment plan such as the Ford Program. Ms. Harford's payment on the five

Sallie Mae loans is at least $1,000 per month, and Sallie Mae cannot or will not work with her to negotiate a lesser payment that fits within her budget.

Two of the Sallie Mae loans are guaranteed by Ms. Harford's parents. The debt on them is $56,000, and the payments are between $400 and $500 per month. Ms. Harford stated that she is not attempting to discharge the two guaranteed loans. In order to protect her parents, she will pay the guaranteed loans even if they are discharged. In other words, of the loans totaling $175,000, Ms. Harford is seeking to discharge three Sallie Mae loans totaling $68,000.

Until filing her chapter 7 petition, Ms. Harford was making $175 per month payments on the DOE loans. She also made interest only payments to Sallie Mae fairly consistently since 2002, excluding periods of forbearance, until filing her petition.

Ms. Harford is 28 years old and is recently married to Shane Sanchez. At the time of the trial, she was expecting her first child. She is healthy and intends to continue working full time.

The debtor did not introduce a current budget of her family's net income and current expenses. From the evidence introduced by the defendants and the testimony, the court must estimate the debtor's income and expenses.

Ms. Harford is employed by Halliburton as an administrative specialist. She believes her employment is secure and that she will receive promotions and/or salary increases in the future of as much as 5% per year. She is interested in becoming a science teacher, a position

with higher pay than she currently earns.

At the time of the trial, Ms. Harford was earning $13.46 per hour. Ms. Harford also earns about $50 per month as a mystery shopper. The pay stubs provided at the trial reflected overtime that Ms. Harford may or may not work in the future. Including overtime pay, Ms. Harford's gross income averages $2,700 per month. Her income net of taxes and a 401k contribution is about $2,200 per month.

Mr. Sanchez also works for Halliburton, earning about $18 per hour, or about $3,400 per month. He also may and does work overtime. In 2006, Mr. Sanchez's net income was about $76,000.

In addition, Mr. Sanchez has a student loan payment of $300 that will increase to $1,300 per month in less than a year. Ms. Harford does not own a vehicle, but borrows a truck from her parents. The couple has health insurance, and they both participate in a 401k plan through their employment with Halliburton.

The debtor's current household expenses are about $3,900 per month. The expenses include several items that the court does not believe are necessary, such as a gym membership and a cleaning service. They pay $150 per month for those expenses. The debtor is also repaying several discharged debts, but the evidence was unclear as to the monthly amount or the term of those obligations.

Based on their current earnings, the couple's net income (with overtime pay) is $8,500 per month. In short, the debtor's household has about $4,600 per month disposable income

from which to pay future day care, a future vehicle payment, Mr. Sanchez's increased student loan payment, and any payment on Ms. Harford's student loans.

## Conclusions of Law

Ms. Harford seeks a discharge of the student loan obligations under 11 U.S.C. § 523(a)(8) which excepts educational loan debts from discharge "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." In the Tenth Circuit, to determine whether a student loan should be discharged under § 523(a)(8), the bankruptcy court applies a three-part test for undue hardship first articulated in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987), and adopted by the Tenth Circuit Court of Appeals in *Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302 (10th Cir. 2004). Under the *Brunner* analysis, the debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for . . . [herself] and . . . [her] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. If the debtor fails to establish any of the three elements of the test, the debt is not dischargeable. *Id*.

Taking the last element first, the court concludes the debtor has made a good faith effort to repay the loans. A good faith analysis involves a review of whether the debtor is attempting to repay the loans by maximizing resources and minimizing expenses, and

whether the debtor is abusing the student loan system by intentionally creating or contriving the hardship. *In re Polleys*, 356 F.3d at 1312. At all times that the Sallie Mae loans were not in forbearance, Ms. Harford made interest payments, but has been unable to pay down the principal.

With regard to the second factor of the *Brunner* test, the court concludes the debtor's financial circumstances are likely to remain the same during the repayment period. Predicting is impossible, but there is no evidence of circumstances that might affect her future working ability or that of her husband.

The remaining element of the *Brunner* test is the central issue in this case, whether the debtor can maintain a minimal standard of living if forced to repay the Sallie Mae loans. In order to obtain a hardship discharge under § 523(a)(8), the debtor must demonstrate more than mere financial difficulty. *In re Naranjo*, 261 B.R. 248, 258 (Bankr. E.D. Cal. 2001). Most chapter 7 debtors are experiencing financial difficulty.

When this case was filed, Ms. Harford was not married, and admittedly, her finances were much more limited. Nevertheless, the court is required to consider the total family income, including the income of the non-debtor spouse, when determining the debtor's financial situation. *Davis v. Educational Credit Management Corp. (In re Davis)*, 373 B.R. 241, 248 (W.D.N.Y. 2007).

The crux of the debtor's complaint is that she simply does not have the funds to make the required payments due on the Sallie Mae loans, and therefore, the loans are an undue

hardship. In this court's view, the debtor maintains a non-extravagant lifestyle, but one that is more than minimal. The household budget contains sufficient flexibility to pay day care, higher student loan payments for Mr. Sanchez, a vehicle payment and Ms. Harford's student loan payments. This is so even if the debtor made no adjustment to her living expenses.

The debtor is young, healthy, educated and employed. She has health insurance and funds her 401k plan. The debtor's financial prospects for the future are good, and she is currently living in a household with disposable income. The court cannot find that paying the Sallie Mae student loans is an undue hardship under the facts presented in this case because the debtor has not proved that her living standards will be below a minimum if she is forced to repay the loans. The court will issue a judgment in accordance with this Opinion.

DATED this ____ day of November, 2007.

BY THE COURT

United States Bankruptcy Judge

Service to:
    Ken McCartney
    Greg Dyekman
    Steven Sharpe